# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| **IZABELA DEBOWCZYK**, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>v.<br><br>**MR. COOPER GROUP, INC.**, and **NATIONSTAR MORTGAGE, LLC**,<br><br>            Defendants. | **CASE NO.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff IZABELA DEBOWCZYK, ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Defendants Mr. Cooper Group, Inc. and Nationstar Mortgage, LLC ("Defendants") for their failure to properly secure and safeguard Plaintiff's and Class members' personally identifiable information ("PII") stored within Defendants' information network.

Plaintiff makes these allegations on personal information as to those allegations pertaining to herself and her personal circumstances, and upon information and belief, based on the investigation of counsel and facts that are matters publicly known, on all other matters.

## <u>INTRODUCTION</u>

1.      Defendants, headquartered in Coppell, Texas, provide mortgage loan services to the general public. In the regular course of their business, Defendants are required to maintain reasonable and adequate security measures to secure, protect, and safeguard their customers' PII against unauthorized access and disclosure.

2.      During the course of their regular business operations, Defendants acquired, collected, digitized, aggregated, organized, and stored Plaintiff's and Class members' PII.

3.      At all relevant times, Defendants knew or should have known that they stored and/or shared sensitive data, including their PII, which is confidential and highly sensitive and targeted by cybercriminals.

4.      On no later than October 31, 2023, an unauthorized third party gained access to Defendants' computer network and stole Plaintiff's and Class members' PII, including names, addresses, Social Security numbers, dates of birth, and bank account numbers (the "Data Breach").

5.      At least 14.7 million homeowners had their PII stolen in the Data Breach.

6.      The Data Breach was caused by Defendants' failure to implement appropriate security safeguards. Defendants disregarded the rights of Plaintiff and Class members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiff's and Class members' PII was safeguarded, failing to take available steps to prevent unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use.

7.      As a result, the PII of Plaintiff and Class members was compromised through disclosure to an unknown and unauthorized third party—an undoubtedly nefarious third party that seeks to profit off this disclosure by defrauding Plaintiff and Class members in the future.

8.      Plaintiff and Class members have a continuing interest in ensuring that their information is and remains safe, and they are thus entitled to injunctive and other equitable relief.

## JURISDICTION AND VENUE

9.      Venue is proper in this Court pursuant to because Defendants reside and have a principal place of business in Dallas County, and a substantial part of the acts and omissions that

form the basis of this Class Action Complaint occurred in Dallas County.

10.    The Court has subject matter jurisdiction under 28 U.S.C § 1332(d) because this case is brought as a class action, Plaintiff and Defendants are diverse parties, more than 100 members are in the putative class, and the amount in controversy exceeds $5 million.

**THE PARTIES**

11.    Plaintiff is a citizen of Illinois.

12.    Defendants are a Delaware business organizations with their principal place of business in Coppell, Texas. Nationstar Mortgage LLC is the operating subsidiary of Mr. Cooper Group, Inc., and, upon information and belief, Mr. Cooper Group, Inc. is the sole member of Nationstar Mortgage LLC.

**FACTUAL BACKGROUND**

13.    Plaintiff had a mortgage loan serviced by Defendants from November 2019 through July 1, 2023.

14.    In the course of using Defendants' services, Plaintiff was required to provide her PII to Defendants. Defendants unreasonably retained the PII after they no longer had a business relationship.

15.    As a result, Plaintiff's information was among the data accessed by an unauthorized third party in the Data Breach.

16.    On or about January 6, 2024, Plaintiff received a "Notice of Data Breach" (the "Notice"), dated December 20, 2023, from Defendants, a true and correct copy is attached hereto as Exhibit 1, in which Defendants disclosed that on or about October 31, 2023, an unauthorized third party obtained Plaintiff's and Class members' PII in the Data Breach.

17.    The Notice further stated to Plaintiff and Class members that the impacted

information includes names, addresses, social security numbers, and dates of birth. Defendants possessed additional PII of Plaintiff that may also have been stolen in the Data Breach, including billing information, tax information, income information, bank account information, financial information, mortgage, and insurance related information.

18.     As a result of the Data Breach, Plaintiff was injured in the form of lost time dealing with the consequences of the Data Breach, which included and continues to include: time spent verifying the legitimacy and impact of the Data Breach; time spent exploring credit monitoring and identity theft insurance options; time spent self-monitoring her accounts with heightened scrutiny, time spent dealing with the consequences of account fraud.

19.     Plaintiff was also injured by the material risk to future harm she suffers based on the Defendants' breach; this risk is imminent and substantial because Plaintiff's data has been exposed in the breach, the data involved is highly sensitive and presents a high risk of identity theft or fraud.

20.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of her PII that she entrusted to Defendants, and which was compromised in the Data Breach.

21.     Plaintiff has increased anxiety about her loss of privacy and anxiety over the impact of cybercriminals accessing, using, and selling her PII.

22.     Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of unauthorized third parties/criminals.

23.     Plaintiff has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in the Defendants' possession, is protected and safeguarded from

future breaches.

### *Defendants Had an Obligation to Protect Plaintiff's and Class Members' PII*

24.     Defendants' own privacy policy provides written assurances to the Plaintiff and Class members that their PII is secure:

> Keeping financial information is one of our most important responsibilities. Only those persons who need it to perform their job responsibilities are authorized to access your information. We take commercially reasonable precautions to protect your information and limit disclosure by maintaining physical, electronic and procedural safeguards.[1]

> To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. We also contractually require third parties doing business with us to comply with all privacy and security laws."[2]

25.     Defendants could have prevented the Data Breach by adequately securing and encrypting and/or more securely encrypting their servers generally, as well as Plaintiff's and Class members' PII.

26.     Defendants' negligence in safeguarding Plaintiff's and Class members' PII is exacerbated by their previous experience with data breaches, repeated warnings, and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

27.     Yet, despite the prevalence of public announcements of data breaches and data security compromises, Defendants failed to take appropriate steps to protect Plaintiff's and Class members' PII from being compromised.

28.     Defendants' failure to adequately secure Plaintiff's and Class members' sensitive

---

[1] https://www.mrcooper.com/privacy
[2] https://www.mrcooper.com/reference_documents/apollo_mr_cooper/MrCooper_Privacy_Notice.pdf (Last visited January 9, 2024).

PII breaches duties it owes Plaintiff and Class members under statutory and common law. Moreover, Plaintiff and Class members surrendered their highly sensitive personal data to Defendants under the implied condition that Defendants would keep it private and secure. Accordingly, Defendants also have an implied duty to safeguard their data, independent of any statute.

29.    In 2022, 1,802 data breaches occurred, resulting in over 422,000,000 sensitive records being exposed.[3] The over 422,000,000 records being exposed in 2022 represents a substantial increase from 2021 when 293,927,708 sensitive records were exposed in 1,862 data breaches.[4]

30.    In light of recent high profile data breaches at other industry leading companies, including MOVEIt (17.5 Million Records, June 2023), LastPass/GoTo Technologies (30 Million Records, August 2022), Neopets (69 Million Records, July 2022), WhatsApp (500 million records, November 2022), Twitter (5.4 Million records, July 2022), Cash App (8.2 Million Users, April 2022), LinkedIn (700 Million Records, April 2021), Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendants knew or should have known that the PII that it collected and maintained would be targeted by cybercriminals.

31.    Moreover, Defendants were, or should have been, aware of the foreseeable risk of a cyberattack. In fact, Okta published a warning directly warning of this type of attack but in 2011.

---

[3] https://www.statista.com/statistics/273550/data-breaches-recorded-in-the-united-states-by-number-of-breaches-and-records-exposed/ (last visited January 9, 2024)
[4] *Id.; see also* 2021 Data Breach Annual Report (ITRC, Jan. 2022) (https://notified.idtheftcenter.org/s/), at 6. (last visited January 9, 2024)

32.     Defendants were prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce."[5]

33.     In addition to their obligations under federal and state laws, Defendants owed a duty to Plaintiff and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in Defendants' possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

34.     Defendants owed a duty to Plaintiff and Class members to provide reasonable security, including compliance with industry standards and requirements, and to ensure that computer systems, networks, and protocols adequately protected the PII of Plaintiff and Class members.

35.     Defendants owed a duty to Plaintiff and Class members to design, maintain, and test computer systems, servers, networks, and personnel policies and procedures to ensure that the PII was adequately secured and protected.

36.     Defendants owed a duty to Plaintiff and Class members to create and implement reasonable data security practices and procedures to protect the PII in their possession, including not sharing information with other entities who maintained sub-standard data security systems.

37.     Defendants owed a duty to Plaintiff and Class members to implement processes that would immediately detect a breach in data security systems in a timely manner.

38.     Defendants owed a duty to Plaintiff and Class members to act upon data security warnings and alerts in a timely fashion.

---

[5] The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. See, e.g., *FTC v. Wyndham Worldwide Corp*., 799 F.3d 236 (3d Cir. 2015).

39.    Defendants owed a duty to Plaintiff and Class members to disclose when their computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material fact in the decision to entrust this PII to Defendants.

40.    Defendants owed a duty of care to Plaintiff and Class members because they were foreseeable and probable victims of any inadequate data security practices.

41.    Defendants owed a duty to Plaintiff and Class members to encrypt and/or more reliably encrypt Plaintiff's and Class members' PII and monitor user behavior and activity in order to identify possible threats.

### *Value of PII to Criminals*

42.    PII is a valuable commodity on the "cyber black market" where criminals buy and sell stolen payment card numbers, Social Security numbers, and other personal information.

43.    Numerous sources cite dark web pricing for stolen identity credentials; for example, personal information is sold at prices ranging from $40 to $200, and bank details have a price range of $50 to $200.[6]  Criminals also can purchase access to entire sets of information obtained from company data breaches for prices ranging from $900 to $4,500.[7]

44.    Social Security numbers are among the worst kinds of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change.

45.    The Social Security Administration stresses that the loss of an individual's Social

---

[6] Your Personal Data Is for Sale on the Dark Web. Here's How Much It Costs, Digital Trends, Oct. 16, 2019, available at: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/#:~:text=To%20gain%20access%20to%20someone's, range%20of%20%2450%20to%20%24200. (Last visited January 9, 2024).
[7] In the Dark, VPNOverview, 2019, available at: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (Last visited January 9, 2024).

Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[8]

46.     In addition, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against potential misuse of a Social Security number is not permitted; an individual instead must show evidence of actual, ongoing fraud to obtain a new number.[9]

47.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."

48.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, in that situation, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—name, birthdate, and Social Security number.

49.     This data commands a much higher price on the black market. Martin Walter,

---

[8] Social Security Administration, Identity Theft and Your Social Security Number, available at: https://www.ssa.gov/pubs/EN-05-10064.pdf (Last visited January 9, 2024).
[9] Bryan Naylor, Victims of Social Security Number Theft Find It's Hard to Bounce Back, NPR (Feb. 9, 2015), available at: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-shackers-has-millionsworrying-about-identity-theft (Last visited January 9, 2024).

senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[10]

50.     Identity thieves can use PII to perpetrate a variety of crimes that harm victims— for instance, identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

51.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used: according to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data might be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[11]

52.     Here, Defendants knew of the importance of safeguarding PII and of the foreseeable consequences that would occur if Plaintiff's and Class members' PII were stolen, including the significant costs that would be placed on Plaintiff and Class members as a result of a breach of this magnitude.

53.     Defendants are large, sophisticated organization with the resources to deploy

---

[10] Tim Greene, Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers, IT World, (Feb. 6, 2015), available at:
https://www.networkworld.com/article/935334/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (Last visited January 9, 2024)
[11] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:*
http://www.gao.gov/new.items/d07737.pdf (last accessed January 9, 2024).

robust cybersecurity protocols. It knew or should have known, that the development and use of such protocols were necessary to fulfill their statutory and common law duties to Plaintiff and Class members. Therefore, their failure to do so is intentional, willful, reckless and/or grossly negligent.

54.    Defendants disregarded the rights of Plaintiff and Class members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that their network servers were protected against unauthorized intrusions; (ii) failing to disclose that they did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class members' PII; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiff and Class members prompt and accurate notice of the Data Breach.

### Common Injuries & Damages Suffered by the Plaintiff and Class Members

55.    As a result of Defendants' ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of PII ending up in the possession of criminals, the risk of identity theft to the Plaintiff and Class members has materialized and is present and continuing, and Plaintiff and Class members have all sustained actual injuries and damages, including: (a) invasion of privacy; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (c) the loss of benefit of the bargain (price premium damages); (d) diminution of value of their PII; and (e) the continued risk to their PII, which remains in the possession of Defendants, and which is subject to further breaches, so long as Defendants fail to undertake appropriate and adequate measures to protect Plaintiff's and Class members' PII.

56.     Plaintiff and Class members are at a heightened risk of identity theft for years to come.  The link between a data breach and the risk of identity theft is simple and well-established. Criminals acquire and steal PII to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft-related crimes.

57.     As a result of the recognized risk of identity theft, when a data breach occurs, and an individual is notified by a company that their PII was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft or fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm—yet, the resource and asset of time has been lost.

58.     Plaintiff and Class members have spent and will spend additional time in the future, on a variety of prudent actions to remedy the harms they have or may experience as a result of the Data Breach, such as researching and verifying the legitimacy of the Data Breach.

59.     These efforts are consistent with the U.S. Government Accountability Office report in 2007 regarding data breaches in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[12]

60.     These efforts are also consistent with the steps the FTC recommends data breach victims take to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting

---

[12] See United States Government Accountability Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007), https://www.gao.gov/new.items/d07737.pdf ("GAO Report"). (last visited January 9, 2024)

companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[13]

61.     The injuries to Plaintiff and Class members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class members.

62.     There is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the PII for identity theft crimes ——e.g., opening bank accounts in the victims' names to make purchases or to launder money; file false tax returns; take out loans or lines of credit; or file false unemployment claims.

63.     Such fraud may go undetected until debt collection calls commence months, or even years, later. An individual may not know that his or her Social Security Number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. And fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

64.     Consequently, Plaintiff and Class members are at a present and continuous risk of fraud and identity theft for many years into the future.  The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class member. This is a reasonable and necessary cost to monitor to protect Class members from the risk of identity theft that arose from Defendants' Data Breach. This is a future cost that Plaintiff and Class members would not need to bear but for Defendants' failure to safeguard their PII.

---

[13] Id.

## CLASS ACTION ALLEGATIONS

65.    Plaintiff brings this action pursuant to the provisions of Fed. R. Civ. P. 23 on behalf of herself and the following Class:

All persons whose PII was obtained by unauthorized third parties in the Data Breach.

66.    In addition, Plaintiff brings this action pursuant to the provisions of Fed. R. Civ. P. 23 on behalf of herself and the following Illinois Subclass:

All Illinois residents whose PII was obtained by unauthorized third parties in the Data Breach.

67.    Excluded from the Class and Subclass are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as immediate family members.

68.    Plaintiff reserves the right to amend the above definitions or to propose subclasses in subsequent pleadings and motions for class certification.

69.    This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is easily ascertainable.

70.    Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy, as the members of the Class (which Plaintiff is informed and believe, and on that basis, allege that the total number of persons exceeds 14.7 million individuals) are so numerous that joinder of all members is impractical, if not impossible.

71.    <u>Commonality</u>: Plaintiff and the Class members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

    a.    Whether Defendants had a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, using, and/or safeguarding their PII;

    b.    Whether Defendants knew or should have known of the susceptibility of their data security systems to a data breach;

    c.    Whether the Defendants' security procedures and practices to protect their systems were reasonable in light of the measures recommended by data security experts;

    d.    Whether Defendants' failure to implement adequate data security measures allowed the Data Breach to occur;

    e.    Whether Defendants failed to comply with their own policies and applicable laws, regulations, and industry standards relating to data security;

    f.    Whether Defendants adequately, promptly, and accurately informed Plaintiff and Class members that their PII had been compromised;

    g.    How and when Defendants actually learned of the Data Breach;

    h.    Whether Defendants' conduct, including their failure to act, resulted in or was the proximate cause of the breach of their systems, resulting in the loss of the PII of Plaintiff and Class members;

    i.    Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j. Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiff and Class members;

k. Whether Plaintiff and Class members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or accounting is/are appropriate as a result of Defendants' wrongful conduct; and

l. Whether Plaintiff and Class members are entitled to restitution as a result of Defendants' wrongful conduct.

72. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class sustained damages arising out of and caused by Defendants' common course of conduct in violation of law, as alleged herein.

73. <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the Class in that the Plaintiff has the same interest in the litigation of this case as the Class members, is committed to the vigorous prosecution of this case, and has retained competent counsel who are experienced in conducting litigation of this nature.

74. Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class members or the class in its entirety. Plaintiff anticipates no management difficulties in this litigation.

75. <u>Superiority of Class Action</u>: Since the damages suffered by individual Class members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member make or may make it impractical for members of the Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought by each individual member of the Class, the resulting

multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

76.    The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately.

77.    This class action is also appropriate for certification because the Defendants has acted or refused to act on grounds generally applicable to Class members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class in its entirety.

78.    Defendants' policies and practices challenged herein apply to and affect Class members uniformly and Plaintiff's challenge of these policies and practices hinges on Defendants' conduct with respect to the Class in its entirety, not on facts or law applicable only to Plaintiff.

79.    Unless a Class-wide injunction is issued, Defendants may continue failing to properly secure the PII of Class members, and Defendants may continue to act unlawfully as set forth in this Complaint.

80.    Further, Defendants have acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## CLAIMS FOR RELIEF

### COUNT ONE
**Negligence**
**(On Behalf of Plaintiff and the Class)**

81.    Plaintiff realleges and reincorporates every allegation set forth in the preceding

paragraphs as though fully set forth herein.

82.     At all times herein relevant, Defendants owed Plaintiff and Class members a duty of care, *inter alia*, to act with reasonable care to secure and safeguard their PII and to use commercially reasonable methods to do so. Defendants took on this obligation upon accepting and storing the PII of Plaintiff and Class members in their computer systems and on their networks.

83.     Among these duties, Defendants were expected:

a.      to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in their possession;

b.      to protect Plaintiff's and Class members' PII using reasonable and adequate security procedures and systems that were/are compliant with industry-standard practices;

c.      to implement processes to detect the Data Breach quickly and to timely act on warnings about data breaches; and

d.      to promptly notify Plaintiff and Class members of any data breach, security incident, or intrusion that affected or may have affected their PII.

84.     Defendants knew that the PII was private and confidential and should be protected as private and confidential and, thus, Defendants owed a duty of care not to subject Plaintiff and Class members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

85.     Defendants knew or should have known, of the risks inherent in collecting and storing PII, the vulnerabilities of their data security systems, and the importance of adequate security.

86.    Defendants knew about numerous, well-publicized data breaches.

87.    Defendants knew or should have known, that their data systems and networks did not adequately safeguard Plaintiff's and Class members' PII.

88.    Only Defendants were in the position to ensure that their systems and protocols were sufficient to protect the PII that Plaintiff and Class members had entrusted to them.

89.    Defendants breached their duties to Plaintiff and Class members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard their PII.

90.    Because Defendants knew that a breach of their systems could damage thousands of individuals, including Plaintiff and Class members, Defendants had a duty to adequately protect their data systems and the PII contained therein.

91.    Plaintiff's and Class members' willingness to entrust Defendants with their PII was predicated on the understanding that Defendants would take adequate security precautions.

92.    Moreover, only Defendants had the ability to protect their systems and the PII it stored on them from attack. Thus, Defendants had a special relationship with Plaintiff and Class members.

93.    Defendants also had independent duties under state and federal laws that required Defendants to reasonably safeguard Plaintiff's and Class members' PII and promptly notify them about the Data Breach. These "independent duties" are untethered to any contract between Defendants, Plaintiff, and/or the remaining Class members.

94.    Defendants breached their general duty of care to Plaintiff and Class members in, but not necessarily limited to, the following ways:

      a.    by failing to provide fair, reasonable, or adequate computer systems and

data security practices to safeguard the PII of Plaintiff and Class members;

b.    by failing to timely and accurately disclose that Plaintiff's and Class members' PII had been improperly acquired or accessed;

c.    by failing to adequately protect and safeguard the PII by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PII;

d.    by failing to provide adequate supervision and oversight of the PII with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather PII of Plaintiff and Class members, misuse the PII and intentionally disclose it to others without consent.

e.    by failing to adequately train their employees not to store PII longer than absolutely necessary;

f.    by failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class members' PII;

g.    by failing to implement processes to detect data breaches, security incidents, or intrusions quickly; and

h.    by failing to encrypt Plaintiff's and Class members' PII and monitor user behavior and activity in order to identify possible threats.

95.    Defendants' willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

96.    As a proximate and foreseeable result of Defendants' grossly negligent conduct, Plaintiff and Class members have suffered damages and are at imminent risk of additional harms

and damages.

97.    To date, Defendants has not provided sufficient information to Plaintiff and Class members regarding the extent of the unauthorized access and continues to breach their disclosure obligations to Plaintiff and Class members.

98.    Further, through their failure to provide clear notification of the Data Breach to Plaintiff and Class members, Defendants prevented Plaintiff and Class members from taking meaningful, proactive steps to secure their PII.

99.    There is a close causal connection between Defendants' failure to implement security measures to protect the PII of Plaintiff and Class members and the harm suffered, or risk of imminent harm suffered by Plaintiff and Class members.

100.    Plaintiff's and Class members' PII was accessed as the proximate result of Defendants' failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

101.    Defendants' wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

102.    The damages Plaintiff and Class members have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendants' grossly negligent conduct.

103.    As a direct and proximate result of Defendants' negligence and negligence *per se*, Plaintiff and Class members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and

attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to, efforts spent researching how to prevent, detect, contest, and recover from embarrassment and identity theft; (vi) the continued risk to their PII, which may remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fails to undertake appropriate and adequate measures to protect Plaintiff's and Class members' PII in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class members.

104.    As a direct and proximate result of Defendants' negligence and negligence *per se*, Plaintiff and Class members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

105.    Additionally, as a direct and proximate result of Defendants' negligence, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendants' possession and are subject to further unauthorized disclosures so long as Defendants fails to undertake appropriate and adequate measures to protect the PII in their continued possession.

**COUNT TWO**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

106.    Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

107.    Through their course of conduct, Defendants, Plaintiff and Class members entered into implied contracts for Defendants to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class members' PII.

108.    Defendants required Plaintiff and Class members to provide and entrust their PII as a condition of obtaining Defendants' services.

109.    Defendants solicited and invited Plaintiff and Class members to provide their PII as part of Defendants' regular business practices.

110.    Plaintiff and Class members accepted Defendants' offers and provided their PII to Defendants.

111.    As a condition of being direct consumers of Defendants, Plaintiff and Class members provided and entrusted their PII to Defendants.

112.    In so doing, Plaintiff and Class members entered into implied contracts with Defendants by which Defendants agreed to safeguard and protect such non-public information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and Class members if their data had been breached and compromised or stolen.

113.    A meeting of the minds occurred when Plaintiff and Class members agreed to, and did, provide their PII to Defendants, in exchange for, amongst other things, the protection of their PII.

114.    Plaintiff and Class members fully performed their obligations under the implied contracts with Defendants.

115.    Defendants breached their implied contracts with Plaintiff and Class members by failing to safeguard and protect their PII and by failing to provide accurate notice to them that their PII was compromised as a result of the Data Breach.

116.    As a direct and proximate result of Defendants' above-described breach of implied contract, Plaintiff and Class members have suffered (and will continue to suffer) (a) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in

monetary loss and economic harm; (b) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (c) loss of the confidentiality of the stolen confidential data; (d) the illegal sale of the compromised data on the dark web; (e) lost work time; and (f) other economic and non-economic harm.

117.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

118.    Additionally, as a direct and proximate result of Defendants' conduct, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendants' possession and are subject to further unauthorized disclosures so long as Defendants fails to undertake appropriate and adequate measures to protect the PII in their continued possession.

## COUNT THREE
### Breach of Fiduciary Duty
### (On Behalf of Plaintiff and the Class)

119.    Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

120.    Defendants benefited from receiving Plaintiff's and Class members' PII by their ability to retain and use that information for their own benefit. Defendants understood this benefit.

121.    In providing their PII to Defendants for the purpose of engaging in business transactions with Defendants, Plaintiff and the Class members placed a special trust in Defendants to securely maintain and protect their PII from unauthorized access and distribution.

122.    By requesting and accepting the Plaintiff's and the Class members' PII,

Defendants knew that the Plaintiff and Class members placed a special trust in Defendants to securely maintain and protect their PII from unauthorized access and distribution.

123.    Based upon the relative knowledge and skill necessary for Defendants to secure the PII of Plaintiff and Class members, Defendants' relationship with Plaintiff and Class members went beyond a common business relationship and was in fact a fiduciary relationship. The Plaintiff and Class members were at all times ordinary consumers who lacked the ability to monitor security needs necessary for Defendants to maintain when it received the PII.  As such, Defendants owed a fiduciary duty to Plaintiff and Class members to take all steps necessary to secure and protect the PII of Plaintiff and Class members in compliance with all industry standards and in compliance with all applicable state and federal laws and regulations.

124.    Based on the allegations above, *supra*, Defendants breached their fiduciary duty by failing to maintain the safety and security of the PII of Plaintiff and Class members at all times and allowing the Breach to occur.

125.    As a direct and proximate result of Defendants' above-described breach of implied contract, Plaintiff and Class members have suffered (and will continue to suffer) (a) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (b) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (c) loss of the confidentiality of the stolen confidential data; (d) the illegal sale of the compromised data on the dark web; (e) lost work time; and (f) other economic and non-economic harm.

126.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-

economic losses.

127.    Additionally, as a direct and proximate result of Defendants' conduct, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendants' possession and are subject to further unauthorized disclosures so long as Defendants fails to undertake appropriate and adequate measures to protect the PII in their continued possession.

128.    As a result of Defendants' wrongful conduct, as alleged above, Plaintiff and Class members are entitled to an award of actual damages and an award of punitive damages in an amount to be determined at trial.

<u>**COUNT FOUR**</u>
**Invasion of Privacy**
**(Intrusion Upon Seclusion)**
**(On Behalf of Plaintiff and the Class)**

129.    Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

130.    Plaintiff and Class members had a reasonable expectation of privacy in the PII.

131.    As a result of the Defendants' conduct, publicity was given to the PII of Plaintiff and Class members which necessarily includes matters concerning their private life.

132.    The PII of the Plaintiff and Class members is not of legitimate public concern and should remain private.

133.    By knowingly failing to keep the PII of the Plaintiff and Class members safe, and by knowingly misusing said information, Defendants negligently, recklessly, and intentionally invaded the privacy of the Plaintiff and Class members by intruding into the private affairs of the Plaintiff and Class members, without approval, in a manner that would be highly offensive and objectionable to a person of ordinary sensibilities.

134.    Defendants knew that an ordinary person in the position of Plaintiff or Class members would consider Defendants' negligent, reckless, and intentional actions highly offensive and objectionable.

135.    Such an intrusion into the private affairs of the Plaintiff and Class members is likely to cause outrage, shame, and mental suffering because the PII disclosed includes financial information and sensitive personal information like Social Security Numbers that allow third parties to commit fraud and identity theft.

136.    Defendants invaded the right to privacy of the Plaintiff and the Class members and intruded into the private lives of the Plaintiff and Class members by negligently, recklessly, and intentionally misusing their PII without their informed, voluntary, affirmative, and clear consent.

137.    Defendants intentionally concealed from Plaintiff and Class members an incident that misused their PII without their informed, voluntary, affirmative, and clear consent.

138.    As a proximate result of such intentional misuse, the reasonable expectations of privacy that the Plaintiff and Class members have in their PII was unduly frustrated and thwarted.

139.    Defendants' conduct amounts to a substantial and serious invasion of the protected privacy concerns of the Plaintiff and Class members causing anguish and suffering such that a person with ordinary sensibilities would consider Defendants' intentional actions or inaction highly offensive and objectionable.

140.    In failing to protect Plaintiff's and Class members' PII, and in negligently, recklessly, and intentionally misusing their PII, the Defendants acted with intentional malice and oppression and in conscious disregard of the rights of the Plaintiff and Class members to have such information kept secure, confidential, and private.

141.    As a direct and proximate result of Defendants' invasion of privacy, the Plaintiff and Class members are at a current and ongoing risk of identity theft and sustained compensatory damages including: (a) invasion of privacy; (b) financial "out of pocket" costs incurred mitigating the materialized risk and imminent threat of identity theft; (c) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (d) financial "out of pocket" costs incurred due to actual identity theft; (e) loss of time incurred due to actual identity theft; (f) loss of time due to increased spam and targeted marketing emails; (g) diminution of value of their PII; (h) future costs of identity theft monitoring; (i) anxiety, annoyance and nuisance; and (j) the continued risk to their PII, which remains in the possession of Defendants, and which is subject to further breaches, so long as Defendants fails to undertake appropriate and adequate measures to protect PII of the Plaintiff and Class members.

142.    Plaintiff and Class members are entitled to compensatory, consequential, punitive, and nominal damages suffered as a result of the Data Breach.

143.    Plaintiff and Class members are also entitled to injunctive relief requiring Defendants to, *e.g.*, (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class members.

## COUNT FIVE
### Breach of Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Class)

144.    Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

145.    As described above, when Plaintiff and the Class members provided their PII to Defendants, they entered into implied contracts in which Defendants agreed to comply with their

statutory and common law duties and industry standards to protect Plaintiff's and Class members'

PII and to timely detect and notify them in the event of a data breach.

146.    These exchanges constituted an agreement between the parties: Plaintiff and Class

members were required to provide their PII in exchange for products and services provided by

Defendants, as well as an implied covenant by Defendants to protect Plaintiff's PII in their

possession.

147.    It was clear by these exchanges that the parties intended to enter into an agreement.

148.    Plaintiff and Class members would not have disclosed their PII to Defendants but

for the prospect of Defendants' promise of certain products and services. Conversely, Defendants

presumably would not have taken Plaintiff's and Class members' PII if it did not intend to provide

Plaintiff and Class members with the products and services it was offering.

149.    Implied in these exchanges was a promise by Defendants to ensure that the PII of

Plaintiff and Class members in their possession was only used to provide the agreed-upon products

and services.

150.    Plaintiff and Class members therefore did not receive the benefit of the bargain with

Defendants, because they provided their PII in exchange for Defendants' implied agreement to

keep it safe and secure.

151.    While Defendants had discretion in the specifics of how it met the applicable laws

and industry standards, this discretion was governed by an implied covenant of good faith and fair

dealing.

152.    Defendants breached this implied covenant when it engaged in acts and/or

omissions that are declared unfair trade practices by the FTC and state statutes and regulations.

These acts and omissions included: omitting, suppressing, and concealing the material fact of the

inadequacy of the privacy and security protections for Plaintiff's and Class members' PII; storing the PII of former customers, despite any valid purpose for the storage thereof having ceased upon the termination of the business relationship with those individuals; and failing to disclose to Plaintiff and Class members at the time they provided their PII to it that Defendants' data security systems failed to meet applicable legal and industry standards.

153.    Plaintiff and Class members did all or substantially all the significant things that the contract required them to do.

154.    Likewise, all conditions required for Defendants' performance were met.

155.    Defendants' acts and omissions unfairly interfered with Plaintiff's and Class members' rights to receive the full benefit of their contracts.

156.    Plaintiff and Class members have been or will be harmed by Defendants' breach of this implied covenant in the many ways described above, including actual identity theft and/or imminent risk of certainly impending and devastating identity theft that exists now that cyber criminals have their PII, and the attendant long-term expense of attempting to mitigate and insure against these risks.

157.    Defendants are liable for their breach of these implied covenants, whether or not it is found to have breached any specific express contractual term.

158.    Plaintiff and Class members are entitled to damages, including compensatory damages and restitution, declaratory and injunctive relief, and attorney fees, costs, and expenses.

**<u>COUNT SIX</u>**
**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS 505/1, *et seq*.**
**(On Behalf of Plaintiff and the Illinois Subclass)**

159.    Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

160.    As a corporation that collects, handles, stores, and maintains patient information that is nonpublic and personally identifiable information, Defendants are a data collector within the meaning of 815 ILCS 530/5.

161.    As a data collector, Defendants are required to implement and maintain reasonable security measures to protect Plaintiff's and Class members' PII from unauthorized access, acquisition, destruction, use, modification, or disclosure. 815 ILCS 530/45.

162.    Defendants breached these duties and the applicable standards of care by:

- Failing to conduct proper and reasonable due diligence and oversight over employees, agents, and vendors who access to PII and their data security systems, practices, and procedures;

- Failing to conduct proper and reasonable due diligence over the employees, agents, and vendors who were the vector(s) of and/or facilitated the hackers' infiltration into the system(s) storing Plaintiff's and Class members' PII;

- Failing to maintain reasonable and appropriate oversight and audits on employees, agents, or vendors who were the vectors of the hackers' infiltration into the system(s) storing Plaintiff's and Class members' PII;

- Failing to implement and maintain reasonable safeguards and procedures, such as encryption, to prevent the unauthorized disclosure of Plaintiff's and Class members' PII;

- Failing to monitor and detect their confidential and sensitive data environment(s) storing Plaintiff's and Class members' PII reasonably and appropriately in order to repel or limit the Data Breach;

- Failing to implement and maintain reasonable data storage and retention procedures with respect to the PII to ensure the PII was being stored and maintained for legitimate and useful purposes;

- Failing to undertake reasonable and sufficient incident response measures to ensure that the cyberattack directed toward Defendants' sensitive information would be thwarted and not expose and cause disclosure and unauthorized acquisition of Plaintiff's and Class members' PII;

- Failing to cure deficiencies in data security that allowed the Data Breach to continue, grow in severity and scope, and go undetected and undeterred for additional time;

- Failing to ensure that Plaintiff's and Class members' PII was timely deleted, destroyed, rendered unable to be used, or returned to Plaintiff and Class members;

- Failing to reasonably conduct a forensic investigation into the scope, nature, and exposure of the Data Breach or to ascertain their full severity;

- Failing to provide full disclosure about, and deceptively misleading consumers through false representations and misleading omissions of fact regarding, the Data Breach, consumers' risk and exposure caused by the Data Breach, and the adequacy of the investigation of and response to the Data Breach;

- Failing to provide accurate, complete, and sufficiently detailed notification to Plaintiff and Class members regarding the circumstances of the Data Breach, the causes, effects, the extent of the exposure of their PII, and

details regarding the disposition of Plaintiff's and the other Class members'
PII at all times during the Data Breach.

163.    Defendants failed to timely notify Plaintiff and Class members that their PII was
acquired in the Data Breach. Likely, notification could have been provided in mere days to all the
individuals whose names and information was contained in the files that were accessed by the
criminals. Instead, Defendants delayed notification while cyber criminals were able to perpetrate
fraud with Plaintiff's and Class members' PII unbeknownst to them long after Defendants became
aware of the Data Breach.

164.    As a proximate result of Defendants' unfair acts and practices described above and
the resulting injuries to Plaintiff and Class members, as herein alleged, Plaintiff and Class members
have incurred damages.

165.    As a direct and proximate result of Defendants' unlawful acts and omissions,
Plaintiff and Class members have suffered actual and concrete injuries and will suffer addition
injuries into the future, including economic and non-economic damages in the following forms:
(a) invasion of privacy; (b) financial costs incurred mitigating the imminent risk of identity theft;
(c) loss of time and loss of productivity incurred mitigating the imminent risk of identity theft; (d)
loss of time and loss of productivity heeding Defendants' warnings and following their instructions
in the notice letter; (e) financial costs incurred due to actual identity theft; (f) the cost of future
identity theft monitoring; (g) loss of time incurred due to actual identity theft; (h) loss of time and
annoyance due to increased targeting with phishing attempts and fraudulent robo-calls; and (i) and
diminution of value of their PII.

166.    Additionally, as a direct and proximate result of Defendants' unlawful conduct,
Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their

PII, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fails to undertake appropriate and adequate measures to protect the PII in their continued possession. Plaintiff and Class members are, therefore, also seeking injunctive relief for the continued risk to their PII, which remains in the possession of Defendants, and which is subject to further breaches, so long as Defendants fails to undertake appropriate and adequate measures to safeguard the PII.

167.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and Class members are entitled to recover actual, consequential, punitive damages, as well as injunctive relief, and reasonable attorney's fees and costs, pursuant to 815 ILCS 505/10a and 815 ILCS 505/2z.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and each member of the proposed Class and Subclass, respectfully requests that the Court enter judgment in their favor and for the following specific relief against Defendants, as follows:

A.    That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed Class and/or any other appropriate Subclasses under F.R.C.P. Rule 23 (b)(1), (b)(2), and/or (b)(3), including the appointment of Plaintiff's counsel as Class Counsel;

B.    For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

C.    That the Court enjoin Defendants, ordering them to cease from unlawful activities;

D.    For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class

members;

    E.    For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class members, including but not limited to an Order:

        i.    prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

        ii.    requiring Defendants to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

        iii.    requiring Defendants to delete and purge the PII of Plaintiff and Class members unless Defendants can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class members;

        iv.    requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiff's and Class members' PII;

        v.    requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendants' systems periodically;

        vi.    prohibiting Defendants from maintaining Plaintiff's and Class members' PII on a cloud-based database;

        vii.    requiring Defendants to segment data by creating firewalls and access controls so that, if one area of Defendants' network is compromised,

hackers cannot gain access to other portions of Defendants' systems;

viii.   requiring Defendants to conduct regular database scanning and securing checks;

ix.   requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PII, as well as protecting the PII of Plaintiff and Class members;

x.   requiring Defendants to implement a system of tests to assess their respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendants' policies, programs, and systems for protecting personal identifying information;

xi.   requiring Defendants to implement, maintain, review, and revise as necessary a threat management program to monitor Defendants' networks for internal and external threats appropriately, and assess whether monitoring tools are properly configured, tested, and updated; and

xii.   requiring Defendants to meaningfully educate all Class members about the threats they face due to the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

F.   For prejudgment interest on all amounts awarded, at the prevailing legal rate;

G.   For an award of attorney's fees, costs, and litigation expenses, as allowed by law;

and

H.     For all other Orders, findings, and determinations identified and sought in this Complaint.

Plaintiff IZABELA DEBOWCZYK, individually and on behalf of all others similarly situated,


By:  /s/ Kurt H. Jones
        Kurt H. Jones
        **The Dann Law Firm Co LPA**
        15000 Madison Avenue
        Lakewood, OH 44107
        216-373-0539:
        *kjones@dannlaw.com*

        Thomas A. Zimmerman, Jr.
        (*pro hac vice anticipated*)
        **ZIMMERMAN LAW OFFICES, P.C.**
        77 W. Washington Street, Suite 1220
        Chicago, Illinois 60602
        (312) 440-0020 telephone
        (312) 440-4180 facsimile
        *firm@attorneyzim.com*

        Counsel for Plaintiff and the Proposed Class and Subclass

Mr. Cooper
c/o Cyberscout
PO Box 1286
Dearborn, MI 48120-9998

PJ6R7M00406777
ILABELA DEBOWCLYK
9446 BAY COLONY DR 3S
DES PLAINES, IL 60016-3646



December 20, 2023

**Notice of Data Breach**

Dear ILABELA DEBOWCLYK,

Nationstar Mortgage LLC (dba Mr. Cooper) writes to inform you of a data security incident at Mr. Cooper that may have involved some of your personal information. If you are not familiar with the Mr. Cooper brand:

- Your mortgage may have been previously acquired or serviced by Nationstar Mortgage LLC or Centex Home Equity;

- Your mortgage is or was serviced by a sister brand[1];

- Mr. Cooper may be or previously was the servicing partner of your mortgage company; or

- You previously applied for a home loan with us.

Although we have no evidence at this time that your information has been misused for identity theft or fraud as a result of this incident, we are contacting you to explain the circumstances of this event, and to provide information about the service we will provide to help you protect yourself.

**What Happened?**

On October 31, 2023, Mr. Cooper detected suspicious activity in certain network systems. Immediately upon detection, we initiated response protocols, launched an investigation with the assistance of cybersecurity experts to determine the nature and scope of the incident, and contacted law enforcement. We also made the decision to shut down our systems to contain the incident and in an effort to protect our customers' information. Through our investigation, we determined that there was unauthorized access to certain of our systems between October 30, 2023 and November 1, 2023. During this period, we identified that files containing personal information were obtained by an unauthorized party.

**What information was Involved?**

The personal information in the impacted files included your name, address, Social Security number, date of birth.

**What We Are Doing.**

We take the security of the data entrusted to us very seriously. Upon learning of this incident, we immediately took steps to identify and remediate it, including locking down our systems, changing account passwords, and restoring our systems. We initiated a detailed review to identify personal

**EXHIBIT 1**

---

[1] Sister brands include: RightPath Servicing, Rushmore Servicing, Greenlight Financial Services, and Champion Mortgage

information contained in the impacted files as part of the incident. We are monitoring the dark web and have not seen any evidence that the data related to this incident has been further shared, published, or otherwise misused. We are also further enhancing the security of our systems to help prevent incidents like this from happening in the future.

To help relieve concerns following this incident, we are providing you with access to Single Bureau Credit Monitoring/Single Bureau Credit Report/Single Bureau Credit Score services at no charge. These services provide you with alerts when changes occur to your credit file for 24 months from the date of enrollment. This alert is sent to you the same day that the change or update takes place with the bureau. Finally, we are providing you with proactive fraud assistance to help with any questions that you might have or in the event that you become a victim of fraud. These services will be provided by Cyberscout through Identity Force, a TransUnion company specializing in fraud assistance and remediation services.

**What You Can Do.**

We encourage you to enroll in free identity protection services by logging on to www.mytrueidentity.com and following the instructions provided. When prompted, please provide the following unique code to receive services: FJMKGSYZVBMR. Please note that we are unable to independently take this step for you. In order for you to receive the monitoring services described above, you must enroll within 90 days from the date of this letter. The enrollment requires an internet connection and e-mail account and may not be available to minors under the age of 18 years of age. Please note that when signing up for monitoring services, you may be asked to verify personal information for your own protection to confirm your identity. **You will need to reference the enrollment code provided in this letter when enrolling, so please do not discard this letter.**

In addition to enrolling in the complimentary identity protection and credit monitoring services described above, we encourage you to review the enclosed "Recommended Steps to Help Protect Yourself," which describes other steps you can take to help protect your personal information. These steps include recommendations from the Federal Trade Commission regarding identity theft protection and details on how to place a fraud alert or a security freeze on your credit file. We also encourage you to remain vigilant against incidents of identity theft and fraud, to review your account statements, and to monitor your credit reports for suspicious activity.

**For More Information.**

If you have any questions or would like to learn additional information about this incident, call the Mr. Cooper Cyber Incident Response Line, supported by TransUnion at 1-833-960-4745, available Monday through Friday 8:00am to 8:00pm ET. We deeply regret that this incident has occurred and sincerely apologize for any concerns or inconvenience that it may cause.

Sincerely,

Jay Jones Jr.
Executive Vice President of Servicing, Mr. Cooper

**Recommended Steps to Help Protect Yourself**

Contact information for the three nationwide credit reporting agencies is:

- **Equifax**, PO Box 740241, Atlanta, GA 30374, www.equifax.com, 1-866-349-5191
- **Experian**, PO Box 4500, Allen, TX 75013, www.experian.com, 1-888-397-3742
- **TransUnion**, PO Box 2000, Chester, PA 19022, www.transunion.com, 1-800-916-8800

**Free Credit Report.** It is recommended that you remain vigilant for incidents of fraud and identity theft by reviewing account statements and monitoring your credit report for unauthorized activity. You may obtain a copy of your credit report, free of charge, once every 12 months from each of the three nationwide credit reporting agencies.



To order your annual free credit report please visit **www.annualcreditreport.com**.

You can also order your annual free credit report by mailing a completed Annual Credit Report Request Form (available from the U.S. Federal Trade Commission's website at www.consumer.ftc.gov) to:

Annual Credit Report Request Service, P.O. Box 105283, Atlanta, GA 30348-5283.

**Fraud Alert.** You may place a fraud alert in your file by calling one of the three nationwide credit reporting agencies above. A fraud alert tells creditors to follow certain procedures, including contacting you before they open any new accounts or change your existing accounts. For that reason, placing a fraud alert can protect you, but also may delay you when you seek to obtain credit.

**Security Freeze.** You have the ability to place a security freeze on your credit report.

A security freeze is intended to prevent credit, loans and services from being approved in your name without your consent. To place a security freeze on your credit report, you may be able to use an online process, an automated telephone line, or a written request to any of the three credit reporting agencies listed above. The following information must be included when requesting a security freeze (note that if you are requesting a credit report for your spouse, this information must be provided for him/her as well): (1) full name, with middle initial and any suffixes; (2) Social Security number; (3) date of birth; (4) current address and any previous addresses for the past five years; and (5) any applicable incident report or complaint with a law enforcement agency or the Registry of Motor Vehicles. The request must also include a copy of a government-issued identification card and a copy of a recent utility bill or bank or insurance statement. It is essential that each copy be legible, display your name and current mailing address, and the date of issue.

As of September 21, 2018, it is free to place, lift, or remove a security freeze. You may also place a security freeze for children under the age of 16. You may obtain a free security freeze by contacting any one or more of the following national consumer reporting agencies:

| Equifax Security Freeze | Experian Security Freeze | TransUnion Consumer Solutions |
|---|---|---|
| P.O. Box 105788 | P.O. Box 9554 | P.O. Box 160 |
| Atlanta, GA 30348 | Allen, TX 75013 | Woodlyn, PA 19094 |
| equifax.com/personal/contact-us | experian.com/freeze | freeze.transunion.com |
| 888-378-4329 | 888-397-3742 | 800-916-8800 |

More information can also be obtained by contacting the Federal Trade Commission listed below.

**Federal Trade Commission and State Attorneys General Offices.** If you believe you are the victim of identity theft or have reason to believe your personal information has been misused, you should immediately contact the Federal Trade Commission and/or the Attorney General's office in your home state. You may also contact these agencies for information on how to prevent or avoid identity theft.

You may contact the **Federal Trade Commission**, Consumer Response Center, 600 Pennsylvania Avenue, NW, Washington, DC 20580, www.ftc.gov/bcp/edu/microsites/idtheft/, 1-877-IDTHEFT (438-4338).

**For California residents**: This notification was not delayed by law enforcement. Visit the California Office of Privacy Protection (www.oag.ca.gov/privacy) for additional information on protection against identity theft.

**For Colorado, Georgia, and New Jersey residents**:  You may obtain one or more (depending on the state) additional copies of your credit report, free of charge. You must contact each of the credit reporting agencies directly to obtain such additional report(s).

**For Connecticut residents**: The Attorney General may be contacted at: Office of the Attorney General, 55 Elm Street, Hartford, CT 06106; www.ct.gov/ag; 1-860-808-5318.

**For Iowa residents**:  You are advised to report any suspected identity theft to law enforcement or to the Iowa Attorney General.

**For Kentucky residents**: You may contact the Office of the Attorney General of Kentucky at 700 Capitol Avenue, Suite 118 Frankfort, Kentucky 40601, www.ag.ky.gov, Telephone: 1-502-696-5300.

**For Maryland residents**: The Attorney General may be contacted at: Office of the Attorney General, 200 St. Paul Place, Baltimore, MD, 21202; www.marylandattorneygeneral.gov; 1-888-743-0023; consumer hotline (410) 528-8662.

**For Massachusetts residents**: It is required by state law that you are informed of your right to obtain a police report if you are a victim of identity theft. There is no charge to place a security freeze on your credit report.

**For New Mexico residents**:  You have rights pursuant to the Fair Credit Reporting Act, such as the right to be told if information in your credit file has been used against you, the right to know what is in your credit file, the right to ask for your credit score, and the right to dispute incomplete or inaccurate information.  Further, pursuant to the Fair Credit Reporting Act, the consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information; consumer reporting agencies may not report outdated negative information; access to your file is limited; you must give your consent for credit reports to be provided to employers; you may limit "prescreened" offers of credit and insurance you get based on information in your credit report; and you may seek damages from a violator. You may have additional rights under the Fair Credit Reporting Act not summarized here. Identity theft victims and active duty military personnel have specific additional rights pursuant to the Fair Credit Reporting Act.  You can review your rights pursuant to the Fair Credit Reporting Act by visiting www.consumerfinance.gov/f/201504_cfpb_summary_your-rights-under-fcra.pdf, or by writing Consumer Response Center, Room 130-A, Federal Trade Commission, 600 Pennsylvania Ave. N.W., Washington, D.C. 20580.

**For New York residents**: The Attorney General may be contacted at: Office of the Attorney General, The Capitol, Albany, NY 12224-0341; https://ag.ny.gov/; 1-800-771-7755.

**For North Carolina residents**:  You may contact the North Carolina Office of the Attorney General, Consumer Protection Division, 9001 Mail Service Center, Raleigh, NC 27699-9001, www.ncdoj.gov, 1-877-566-7226.

**For Oregon residents**: You are advised to report any suspected identity theft to law enforcement, the Federal Trade Commission, and the Oregon Attorney General. The Attorney General may be contacted at: Office of the Attorney General, 1162 Court St. NE, Salem, OR 97301-4096; 503-378-6002.

**For Rhode Island residents**: The Attorney General may be contacted at: Office of the Attorney General, 150 South Main Street, Providence, Rhode Island 02903; www.riag.ri.gov; 1-401-274-4400. Under Rhode Island law, you have the right to obtain any police report filed in regard to this incident. This incident affected approximately 47,818 Rhode Island residents.

**For Vermont residents**: If you do not have internet access but would like to learn more about how to place a security freeze on your credit report, contact the Vermont Attorney General's Office at 802-656-3183 (800-649-2424 toll free in Vermont only).

**For Washington, DC residents**: You may contact the Attorney General at: Office of the Attorney General, 441 4th Street NW, Suite 1100 South, Washington, D.C. 20001; https://oag.dc.gov/; 1-202-727-3400 to receive additional information about steps to take to avoid identity theft.